**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| PARIS KING, ) | CASE NO. 1:24-cv-01129 |
| ) | |
| Plaintiff, ) | JUDGE DAVID A. RUIZ |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| RIDESAFELY, INC., ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Paris King, appearing *pro se*, filed this action against Defendant RideSafely, Inc. ("RideSafely"), a Pennsylvania business entity, alleging that Defendant violated section 5 of the Federal Trade Commission Act (FTC Act), 15 U.S.C.A. § 45; 17 C.F.R. § 240.10b-5; Ohio Revised Code § 4505.181; and Ohio Administrative Code § 109:4-3-16 because the vehicle she purchased from Defendant through an online salvage auction site did not meet her expectations. (R. 1). She seeks only punitive damages in the amount of $160,000. (*Id.* at PageID# 4, ¶ 14). This matter is before the Court on Defendant's Motion to Dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (R. 7).[1] This matter has been fully briefed, (R. 7; R. 9; R. 10), and is ripe for the Court's disposition.[2]

---

[1] Defendant also argues that the Court should dismiss the Complaint pursuant to Rules 12(b)(3) and (6) of the Federal Rules of Civil Procedure. (*Id.* at PageID# 46–48). Because the Court dismisses the Complaint under Rule 12(b)(1) for the reasons explained below, the Court declines to address these arguments.

[2] The Court declines to address and has not considered Plaintiff's unauthorized sur-reply, (R. 14), which will be stricken from the record. *See Dryer v. United States*, No. 4:22cv1802, 2023 WL 5625737, at *1 n.1 (N.D. Ohio Aug. 31, 2023) (citing *Petrovic v. United States*, No. 17-6186, 2018 WL 4959031, at *3 (6th Cir. June 8, 2018)).

I. **Background**[3]

Defendant appears to be an online company that connects consumers to various online third-party auto auctions to enable consumers to submit bids directly to these auction sites. (*See* R. 1, PageID# 2, ¶ 6). It further appears that consumers may directly purchase vehicles that Defendant purchased from auctions and has in its inventory. *See id.* In May 2024, Plaintiff purchased a used 2014 BMW X3 with 171,699 miles on the odometer from Defendant for $4,712.00. (R. 1-1, PageID# 8). This vehicle had been part of a salvage auction, a fact that was explicitly disclosed to and acknowledged by the Plaintiff. (*Id.* at PageID# 9).

Plaintiff electronically signed the purchase order agreement for this vehicle on May 16, 2024. (*Id.* at PageID# 19). That agreement states in large, bold, all capital letters, "**THIS VEHICLE IS SOLD 'AS IS – WHERE IS'.**" (*Id.* at PageID# 19). In the section labeled "Warranty Disclaimer" it states,

> If the vehicle purchased is used, then purchaser acknowledges that it is sold strictly as is with all faults and defects after purchaser has examined the vehicle as fully as he has desired as to all parts and systems thereof and without any warranty either express or implied of any nature whatsoever whether for merchantability or for fitness for any particular purpose or as to the condition of any part of any system.

(*Id.* at PageID# 19).

---

[3] The Complaint itself contains little factual information. (*See generally* R. 1). Thus, the Court gleans nearly all the following background information from attachments to the Complaint. *Harrison v. Rockne's Inc.*, 274 F. Supp. 3d 706, 709 (N.D. Ohio 2017) (when ruling on a motion to dismiss, courts may consider, among other things, "documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference").

The agreement included two attached addendums, each of which Plaintiff also electronically signed on May 16, 2024. (*Id.* at PageID# 9, 23). The first Addendum is entitled "Salvage History Acknowledgement" and states:

> I, PARIS KING, certify that I was informed about the salvage history of the vehicle I am purchasing prior to the sale. … I hereby acknowledge that Per Terms and Conditions of the Purchase Order Agreement, the TITLE I will receive may be issued in the state other than the one initially advertised. The title BRAND/TYPE shall be similar to the BRAND/TYPE that was in the initial advertisement.

(*Id.* at PageID# 9). The second addendum states that the "terms and conditions" of the vehicle purchase include "NO WARRANTY, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY." (*Id.* at PageID# 23). It further states that

> THE BUYER UNDERSTANDS AND AGREES THAT THIS VEHICLE IS SOLD 'AS IS,' 'WHERE IS,' WITH ALL ITS FAULTS AND WITHOUT ANY WARRANTY EITHER EXPRESSED OR IMPLIED. THE BUYER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST OR THAT MAY OCCUR IN THE VEHICLE. THE BUYER IS AWARE THAT, AS AN EXAMPLE AND NOT AS LIMITATION OF THE FOREGOING, THE FRAME ON THE VEHICLE MIGHT BE BENT, CRACKED OR TWISTED; ENGINE BLOCK OR HEAD MIGHT BE CRACKED; THE VEHICLE MIGHT NOT PASS STATE INSPECTION; TRANSMISSION MIGHT BE DAMAGED, DEFECTIVE OR SO DETERIORATED AS TO REQUIRE REPLACEMENT; VEHICLE MIGHT BE DAMAGED BY FLOOD; DIFFERENTIAL ON THE VEHICLE MIGHT BE DAMAGED, DEFECTIVE OR SO DETERIORATED AS TO REQUIRE REPLACEMENT.

*Id.* Finally, it also states that:

> Seller expressly disclaims the accuracy or completeness of any and all information provided to Buyers regarding vehicle, whether provided in written, verbal, or digital image form ("Vehicle Information"). Vehicle Information provided by Seller is for convenience only. Buyers shall not rely on Vehicle Information in

> deciding whether or how much to offer on a vehicle offered for sale through RideSafely.com with the information provided by the third parties. Vehicle Information includes but is not limited to: year, make, model, condition, ACV, damage amount, damage type, drivability, accessories, mileage, odometer disclosures, vehicle information number ("VIN"), title, repair history, and total loss history. Seller expressly disclaims any and all representations, warranties, and guarantees regarding vehicles sold through RideSafely.com.

*Id.*

Both the purchase agreement and the second addendum contain a choice of law and forum selection clause providing that the purchaser agrees that all litigation arising out of the agreement or transaction must be brought in the state courts of Pennsylvania, under Pennsylvania law. (*Id.* at PageID# 19, 23). The purchase agreement provides an agreed venue of Philadelphia County, (*id.* at PageID# 19), while the addendum provides an agreed venue of Bucks County, (*id.* at PageID# 23).

Plaintiff's Complaint does not articulate what was wrong with the car she purchased. Instead, it states in general, conclusory terms that Defendant engaged in false advertising and deceptive sales practices by "providing inaccurate information, withholding crucial details, or presenting false claims about the vehicles [it is] selling." (R. 1 at PageID# 3, ¶ 10). Nevertheless, attachments to the Complaint provide some information about Plaintiff's issues with the vehicle. She "encounter[ed] issues with the [vehicle's] battery and transmission shortly after taking possession of the vehicle." (R. 1-1, PageID# 11). These were "fundamental problems preventing the car from operating as promised." *Id.* Although "the vehicle was advertised as running and drivable with only minor dents and scratches," Plaintiff found "upon receipt of the vehicle" that it "d[id] not run properly and require[d] major repairs to be functional." (*Id.* at PageID# 13). She had

"rel[ied] on the information" Defendant's platform provided "to make an informed purchasing decision." *Id.*

With respect to the signed purchase agreement, Plaintiff alleges that although the agreement specifies that the vehicle is being purchased "as is," it "fails to differentiate between minor cosmetic issues like scratches and dents[] and more serious mechanical problems or flood damage." (R. 1, PageID# 3, ¶ 12). She claims that this "lack of clarity raises concerns about the accuracy and integrity of the vehicle listing." *Id.* As such, she contends that the purchase agreement "should be considered void." *Id.*

Plaintiff's Complaint asserts four claims for only punitive damages under section 5 of the FTC Act, 17 C.F.R § 240.10-5, Ohio Revised Code § 4505.181, and Ohio Administrative Code § 109:4-3-16. (R. 1). As to the claim under section 5 of the FTC Act, Plaintiff alleges that "Defendant's actions have contravened" that law. (*Id.* at PageID# 3, ¶ 9). On her 17 C.F.R § 240.10b-5 claim, she alleges that Defendant's "actions in the sale of the vehicle in question appear to have violated" that rule. (*Id.* at PageID# 3, ¶11). On the Ohio Revised Code claim, she alleges that Defendant violated this law "by failing to provide a certificate of title for the used motor vehicle purchased by Plaintiff within the stipulated time frame." (*Id.* at PageID# 3, ¶ 8). On the Ohio Administrative Code Claim, she alleges that Defendant "has been found to mislead consumers through their advertisements or sales tactics" and "providing inaccurate information, withholding crucial details, or presenting false claims" about the vehicles for sale. (*Id.* at PageID# 3, ¶ 10). She alleges that this Court has subject-matter jurisdiction over these claims because Defendant "is a business entity located in Pennsylvania," Plaintiff "is an individual residing in" Ohio, and she seeks punitive damages of $160,000. (*Id.* at PageID# 2, ¶ 1–5). She argues that she should not bound by the choice law and forum clause because she lives in the Northern District of

Ohio and purchased the car online through her computer, which was located in Ohio. (*Id.* at PageID# 4, ¶ 13).

Defendant moved to dismiss the Complaint in its entirety. (R. 7). Defendant argues that Plaintiff fails to allege a basis for federal subject-matter jurisdiction. (*Id.* at PageID# 43–46). Specifically, Defendant argues that Plaintiff does not establish diversity jurisdiction because she "alleges no actual or compensatory damages," (*id.* at PageID# 45), and "it appears to a legal certainty that [she] in good faith cannot claim the jurisdictional amount," (*id.* at PageID# 45–46 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). Defendant further argues that Plaintiff does not establish federal question jurisdiction because section 5 of the FTC Act does not provide a private right of action and that 17 C.F.R. § 240.10b-5 regulates purchasing and selling securities and Plaintiff does not allege "the purchase or sale of securities." (*Id.* at PageID# 43–44).

## II. Standard of Review

A Rule 12(b)(1) motion to dismiss challenges a court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts have limited jurisdiction, meaning that unlike state trial courts, they do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008) (per curiam). Instead, federal courts have only the authority to decide cases that the U.S. Constitution and Congress have empowered them to resolve. *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377(1994) (internal citation omitted).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *United States v.*

*Richie*, 15 F.3d 592, 598 (6th Cir.1994). In a facial attack, the challenger asserts that the allegations in the complaint are insufficient on their face to invoke federal subject-matter jurisdiction. *See In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 884-85 (N.D. Ohio 2010) (citing *Ohio Hosp. Ass'n v. Shalala*, 978 F. Supp. 735, 739 (N.D. Ohio. 1997)). In a factual attack, the challenger disputes the truth of the allegations that would otherwise invoke federal subject-matter jurisdiction. *Id.* A challenge to subject-matter jurisdiction may be considered a factual attack when the attack relies on extrinsic evidence, as opposed to the pleadings alone, to contest the truth of the allegations. *Id.* The plaintiff bears the burden of proving subject-matter jurisdiction in order to survive a motion to dismiss pursuant to Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject-matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

### III. Analysis

Defendant argues that Plaintiff fails to establish a basis for federal subject-matter jurisdiction and the Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(1). (R. 7, PageID# 43–46). Federal courts have "limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen*, 511 U.S. at 377). Therefore, federal courts "may not exercise jurisdiction absent a statutory basis." *Id.* Generally speaking, Congress has given federal courts authority to hear a case only when diversity of citizenship exists between the parties, or when the case raises a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Diversity jurisdiction exists when all adverse parties are citizens of different states and the amount in controversy exceeds $75,000. *Exxon Mobile Corp.*, 545 U.S. at 552–53 (citing 28 U.S.C. § 1332). Federal question jurisdiction exists when a complaint plausibly alleges "either that federal

law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983). The plaintiff bears the burden of proving that subject-matter jurisdiction exists. *Madison-Hughes*, 80 F.3d at 1130.

Defendant argues that Plaintiff has not alleged facts showing that diversity jurisdiction exists. (R. 7, PageID# 45–46). To establish diversity jurisdiction, a plaintiff "must state all parties' citizenships such that the existence of complete diversity can be confirmed." *Washington v. Sulzer Orthopedics, Inc.*, 76 F. App'x 644, 645 (6th Cir. 2003) (quoting *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 221 n.13 (3d Cir. 1999)). A natural person's citizenship "equate[s] with domicile." *Von Dunser*, 915 F.2d at 1072. A corporation is a citizen of its place of incorporation and the state in which "it has its principal place of business." 28 U.S.C. § 1332(c)(1). Plaintiff notes that she "is an individual residing in" Ohio. (R. 1, PageID# 2, ¶ 3). As to Defendant, Plaintiff merely alleges that it "is a business entity located in Pennsylvania." (*Id.* at PageID#2, ¶ 4). She does not establish in which state or states Defendant is incorporated and has its principal place of business. (*See generally id.*) Because Plaintiff does not allege Defendant's citizenship for diversity purposes, she fails to allege facts showing that complete diversity exists. *See Washington*, 76 F. App'x at 645. Therefore, Plaintiff fails to establish diversity jurisdiction. *Exxon Mobile Corp.*, 545 U.S. at 552–53 (citing 28 U.S.C. § 1332).

Additionally, Defendant argues that Plaintiff's allegations do not and cannot satisfy the amount-in-controversy requirement for diversity jurisdiction. (R. 7, PageID# 45–46). "In a federal diversity action, the amount alleged the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount" at the time the complaint was filed. *See Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990). Plaintiff purchased a

ten-year-old car with 171,699 miles on the odometer for $ 4,712.00. (*See* R. 1-1, PageID# 8). She signed an acknowledgement of the car's salvage history as well as disclaimers in which Defendant disavowed any knowledge or guarantee of the car's condition. (*See id.* at PageID# 9, 23). She also signed multiple times agreeing to buy the vehicle "as is." (*See id.* PageID# 19, 23). Plaintiff's attachments to her Complaint indicate that she "encounter[ed] issues with the [vehicle's] battery and transmission," (*id.* at PageID# 11), and that it "d[id] not run properly and require[d] major repairs to be functional," (*id.* at PageID# 13). However, she does not seek compensatory damages, let alone indicate what her actual damages are. (*See* R. 1). Instead, she solely seeks punitive damages of $ 160,000 based on what she alleges were deceptive and unfair sales practices. (*Id.* at PageID# 2, ¶ 5).

Under the Ohio statute providing a private cause of action for deceptive sales practices, the consumer may "rescind the transaction or recover [her] actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages." Ohio Rev. Code Ann. § 1345.09(A). Here, Plaintiff's actual damages appear to be the price of the car, $4,712.00. (*See* R. 1-1, PageID# 8). If she were to collect the full $5,000 permitted for noneconomic damages, the total amount in controversy would be less than $10,000–far less than the jurisdictional amount. None of the statutes or regulations Plaintiff cites in the Complaint authorize an award of punitive damages that is more than thirty-three times the amount of actual damages for the sale of a vehicle.[4]

---

[4] Plaintiff claims that Defendant violated Ohio Revised Code § 4505.181. This statute governs the seller's obligation to deliver the title to the vehicle. *See* Ohio Rev. Code Ann. § 4505.181. The remedies for violating the relevant sections of this statute are found in Ohio Revised Code § 1345.09, *see* Ohio Rev. Code Ann. § 4505.181(H), allowing the recovery described above, which would not meet the amount-in-controversy requirement. She also alleges a violation of Ohio Administrative Code § 109:4-3-16, which merely provides definitions and descriptions of deceptive acts to support Ohio Revised Code § 1345. Finally, the federal statute and regulation Plaintiff mentions are not relevant to vehicle sales.

Plaintiff has not alleged any facts that suggest in good faith that her damages could exceed $75,000. Therefore, her allegations do not satisfy the amount-in-controversy requirement. *Exxon Mobile Corp.*, 545 U.S. at 552–53 (citing 28 U.S.C. § 1332).

Thus, because Plaintiff fails to state facts alleging diversity jurisdiction, this Court would only have subject-matter jurisdiction over Plaintiff's claims if one or more of her claims presented a federal question. *See Franchise Tax Bd*, 463 U.S. at 27–28; *see also* 28 U.S.C. § 1367(a) (providing that when a federal court has original jurisdiction over a civil action, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"). A plaintiff properly invokes federal question jurisdiction if she "pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). The possibility that the complaint might fail to state a claim upon which relief can be granted does not defeat jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). However, "[a] claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 ... may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh*, 546 U.S. at 513 n. 10 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)).

Plaintiff's supposed federal claims are based on a federal statute and a federal regulation that are wholly inapplicable and immaterial to this case. First, she alleges that Defendant violated section 5 of the FTC Act. (R. 1, PageID# 3, ¶19). However, this statute does not provide a private right of action. Only the Federal Trade Commission may bring civil actions under this statute. *See Doe v. Maximus, et al.*, No. , 2010 WL 4789963 *5 (M.D. Tenn. Nov. 15, 2010). Plaintiff also

alleges that Defendant violated 17 C.F.R. § 240.10b-5. This regulation makes it unlawful for any person to engage in deceptive or fraudulent acts in connection with the purchase or sale of any securities. 17 C.F.R. § 240.10b-5. Plaintiff does not allege the sale or purchase of securities. (R. 1). Thus, Plaintiff fails to establish federal-question jurisdiction.

Because Plaintiff fails to establish any basis for federal subject-matter jurisdiction over her claims, the Complaint must be and is dismissed. *See Madison-Hughes*, 80 F.3d at 1130. Her motion for default judgment, (R. 13), is without merit.[5]

### IV. Conclusion

Accordingly, Plaintiff's Motion to Proceed *In Forma Pauperis*, (R. 8), is granted. Defendant's Motion to Dismiss, (R. 7), is hereby GRANTED, and Plaintiff's Complaint is DISMISSED in its entirety for the foregoing reasons. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: May 16, 2025

---

[5] Plaintiff has also moved the Court for default judgment, to compel financial disclosures, to permit her to supplement with vehicle inspection records, and for a conference (R. 15; R. 20; R. 21); and defendant has moved to stay this action (R. 18). Because this case is dismissed for lack of jurisdiction, the foregoing motions are denied as moot.